GOSHORN, J.
Dennis Calabrese appeals his convictions and life sentences on two counts of first-degree murder and one count of armed robbery. Only one of the numerous issues raised warrants discussion, but even it does not require reversal. We accordingly affirm.
Matthew Amos and fifteen-year-old Kris Miller were shot in the head shortly after midnight on February 28, 1995 in the parking lot of the Lopez Plaza shopping center in Palm Bay. Miller died at the scene; Amos lay in a coma before dying several days later in a hospital. Calabrese was charged with the killings, along with Geoffrey Calvert and Robert McKevitt.
At trial, testimony from several witnesses, including McKevitt, revealed that the three co-perpetrators had arranged a drug deal with Miller on the evening of February 27. Miller was to sell them some LSD for $100, and they were to trade a handgun for some Ecstasy that Miller had given them earlier. Shortly after the deal was arranged, McKev-itt, Calabrese, and Calvert decided to rob Miller instead of paying him. Then, thinking that Miller would later retaliate if they robbed him, they decided they would have to kill Miller. There were several discussions concerning this decision and everyone involved knew someone was going to die that night.
The plan was for Calabrese to get the LSD from Miller and then to shoot him. McKev-itt was supposed to shoot any second person who might have come along with Miller, and Calvert was to be at the ready for any third person. However, the testimony was that Calabrese shot both Miller and Amos when McKevitt “chickened out.” McKevitt, who prior to Calabrese’s trial pled guilty, testified to the specific events at Lopez Plaza, and he and other witnesses testified about Cala-brese’s discussion of the murders the next day, including the plan to rob and kill Miller. Calabrese said that the way Miller fell “was the funniest thing he ever saw.”
On appeal, Calabrese contends that the trial court erred in not giving his requested instruction on voluntary intoxication, which is a defense to the specific intent crimes of first-degree premeditated murder and robbery.[1] A voluntary intoxication instruction generally should be given where there is evidence to support it. See, e.g., Cardwell v. State, 481 So.2d 972, 973 (Fla. 2d DCA 1986) (“Any evidence of appellant’s intoxication entitled him to an appropriate jury *848 instruction.”). In this case, there was some evidence of drug consumption by Calabrese prior to the killings, as well as evidence of intoxication at certain times when the murders were allegedly planned.
However, the evidence of premeditation was overwhelming, especially in light of the testimony regarding Calabrese’s discussion of the murder and the plan the next day, which discussion clearly showed that Cala-brese had a fully formed conscious intent to kill. Under the circumstances of this case, the refusal by the trial court to give the instruction was harmless. State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986) (“The unique function of the harmless error rule is to conserve judicial labor by holding harmless those errors which, in the context of the case, do not vitiate the right to a fair trial and, thus, do not require a new trial”) (emphasis supplied); see also § 924.33, Fla. Stat. (1997).[2]
Additionally, although there was evidence that Calabrese was intoxicated when the killings were allegedly planned, there was no testimony that Calabrese was intoxicated earlier in the evening when the robbery was planned. Hence, the first-degree murder conviction is sustainable on the felony murder theory on which the jury was also charged. See San Martin v. State, 717 So.2d 462 (Fla.1998) (upholding first-degree murder conviction where jury returned general verdict; evidence supported felony murder theory even though it did not support finding of premeditation).
AFFIRMED.
COBB and PETERSON, JJ„ concur.

. Robbery was the basis for the felony murder theory. The jury was instructed on both premeditated murder and felony murder, but the verdict form only contained a line for first-degree murder, without differentiation. Such a specialized form is not required. See Sochor v. State, 619 So.2d 285, 288 n. 3 (Fla.1993).

. Section 924.33, "When judgment not to be reversed or modified," provides:
No judgment shall be reversed unless the appellate court is of the opinion, after an examination of all the appeal papers, that error was committed that injuriously affected the substantial rights of the appellant. It shall not be presumed that error injuriously affected the substantial rights of the appellant.